UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth Davis KROESSER,
Defendant-Appellant.

No. 83-3702.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1985.

Clifton C. Curry, Jr., Mark L. Horwitz, Orlando, Fla., for defendant-appellant.

Stephen L. Purcell, Kathleen A. O'Malley, Asst. U.S. Attys., Orlando, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

GODBOLD, Chief Judge:

This appeal involves two prosecutions of the defendant Kroesser resulting in a previous conviction and a guilty plea in the present case. Kroesser's plea agreement specified that he could raise three issues on appeal, which he does now. We find no error and affirm.

### I. Background

The following facts are comprised of the stipulated facts in this case, Rec. 687–93, as well as the facts set forth by a panel of this court in an appeal of the former action. *U.S. v. Kroesser,* 731 F.2d 1509, 1511–15 (11th Cir.1984). Inconsistencies in these two versions of events are noted.

Kroesser was employed as a physical security specialist with the U.S. Bureau of Engraving and Printing in Washington, D.C. from April 19, 1976 to April 19, 1979. On several occasions, beginning in late 1977,[1] he and co-employee Roger W. Harmon stole from $750,000 to $1 million worth of uncut sheets of Federal Reserve Notes in denominations of $20, $50, and $100. They disposed of none of this currency and stored it in a safe in Kroesser's home in Virginia.

In approximately June 1979 Harmon and Kroesser moved to Florida. Our former opinion indicates that a large amount of the notes was stored in the safe in Harmon's house while a small amount was stored in a strongbox in a closet in Kroesser's apartment in Sanford.[2] In Sanford the money was cut up and as much as $16,000 was spent directly by Harmon and Kroesser. In addition, they made two trips to Las Vegas and one to New York to launder some of the money.

In order to launder a greater amount of money Kroesser sought the help of Dennis Pennel, who put him in contact with Dennis's father, John Paul "Jack" Pennel. In late April or early May 1980 Kroesser and Dennis Pennel brought approximately $200,000 of cut notes to Jack Pennel at Fort Myers, Florida. The elder Pennel took approximately $15,000 of that money to London and met with John Stirling and Gordon Rice. The three of them returned to Miami, Florida on or about May 8, 1980 and met Kroesser and Dennis Pennel. Jack Pennel turned over to Stirling and Rice $185,000 of the notes he had been given, while Kroesser and Dennis Pennel

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The opinion in the prior case indicates that the date was the fall of 1977.

2. The stipulated facts indicate that the safe was stored in defendant's home in Longwood, Florida. In any case, the prior decision leaves no doubt that Kroesser did have a strongbox in his apartment.

gave Stirling and Rice another $350,000 worth of notes that they had brought with them. Stirling and Rice were to launder the notes in Nassau and transfer the funds to Jack Pennel's bank accounts in Florida for the benefit of Kroesser and Harmon.

Then the following series of transactions occurred. On or about May 14, 1980 $99,-995 was wire transferred to Jack Pennel's account at the First Commercial Bank in Fort Myers, Florida from Nassau. On or about June 3, 1980 $158,565 was likewise transferred. On June 10, 1980 $92,000 was disbursed out of the trust account of Jack Pennel's Orlando attorney, Mark Cooper, at the Pan American Bank of Orlando. This money had been sent to Cooper's trust account by Jack Pennel at an unspecified date. Of the $92,000, $40,000 was given to Kroesser, $40,000 to Harmon, and $12,000 to Dennis Pennel.[3] On or about August 20, 1980 Jack Pennel met with Kroesser in Winter Park, Florida, bringing $12,500 cash. After wire transferring $22,500 from his account at the Great American Bank of Pinellas County, Pennel gave Kroesser $35,000 cash. On August 25, 1980, another wire transfer from the Bahamas in the amount of $164,887 was placed in Jack Pennel's account at the Great American Bank. Finally, in December 1980 Jack Pennel gave Kroesser and Harmon $98,000 in cash.

On April 26, 1982 Kroesser moved out of his apartment, transferring the strongbox to a Winnebago motor home in Sanford. After Kroesser was arrested for the assault of a girl friend on April 28, 1982, a search of the strongbox disclosed a large quantity of cut and uncut currency. Kroesser then revealed that he had hidden some of the stolen currency in two suitcases in a mini-storage facility in Sanford. A search of the suitcases revealed more than $104,000 in stolen currency.

On May 5, 1982 a federal grand jury returned a two count indictment. Count I related to the currency found in Kroesser's storage locker, while count II related to the currency found in the Winnebago motor home. Count I read as follows:

During April 1982, in Seminole County, Florida, in the Middle District of Florida,

Kenneth D. Kroesser aided and abetted by Roger W. Harmon

willfully and knowingly did conceal and retain stolen property of the United States, to-wit: approximately $95,000 in unissued sheets of Federal Reserve Notes in denominations of $20, $50 and $100, both cut and uncut, of a value in excess of one hundred dollars, with the intent to convert this property to their own use, and Kenneth D. Kroesser and Roger W. Harmon both then well knew such property to have been stolen; in violation of Title 18, United States Code Section 641 and 2.

Count II was identical to count I except that $22,000 rather than $95,000 was the amount of notes specified. Kroesser was convicted on both counts on August 16, 1982.

The case now on appeal began with an April 19, 1983 indictment, which was superseded by an indictment filed on May 25, 1983. A second superseding indictment, which is the focus of this appeal, was handed down July 6, 1983. Count I charged Kroesser and five others with conspiring to receive, conceal, and retain unissued Federal Reserve Notes from March 1979 through June 1982 in the Middle District of Florida and elsewhere.

Count II of the July 1983 indictment charged as follows:

During April 1980, the exact date being unknown to the Grand Jury, in Fort Myers, Florida, in the Middle District of Florida,

---

**3.** The statement of facts contained in our prior opinion says that after this $92,000 was distributed "Kroesser subsequently delivered $300,000 of the stolen currency to Jack Pennel to be Laundered in the same fashion." 731 F.2d at

1512. It is not clear whether this is a mistaken description of the $350,000 previously transferred to Stirling and Rice or a completely new transaction.

KENNETH DAVIS KROESSER,
PAUL DENNIS PENNEL, and
JOHN PAUL PENNEL

willfully and knowingly did conceal and retain stolen property and things of value of the United States, to-wit: approximately $200,000 in unissued sheets of Federal Reserve Notes in denominations of $20, $50, and $100, which sheets were cut into individual notes, of a value in excess of one hundred dollars, with the intent to convert this property to their own use, and Kenneth Davis Kroesser and Paul Dennis Pennel both then well knew such property to have been stolen; in violation of Title 18, United States Code, Section 641 and Section 2.

Kroesser filed motions to dismiss based on alleged violations of the double jeopardy clause and the Speedy Trial Act but these were denied. He then pled guilty to counts I and II in a plea agreement which reserved the right to appeal the trial court's denial of his motions to dismiss.

## II. The count I double jeopardy claim

■ Kroesser's first argument is that count I of the indictment—the conspiracy count—violates the double jeopardy clause because the government introduced evidence of this conspiracy to obtain the prior conviction. The first indictment did not include a conspiracy count. Such a contention was rejected in *U.S. v. Parker*, 582 F.2d 953, 955 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), and is meritless. In the former prosecution jeopardy had never attached with respect to a conspiracy charge. A defendant cannot be tried on charges not contained in the indictment. *Stirone v. U.S.*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Thus, as in *Serfass v. U.S.*, 420 U.S. 377, 388–89, 95 S.Ct. 1055, 1062–1063, 43 L.Ed.2d 265 (1974), where the Supreme Court considered whether the defendant's successful motion to dismiss

the indictment barred reprosecution, jeopardy could not have attached because the trial court "was without power to make any determination regarding ... guilt or innocence." [4]

## III. The count II double jeopardy claim

Kroesser's next argument is that count I of the first indictment bars prosecution under count II of the current indictment because both counts charge but a single continuing offense.

■ Prosecutors cannot avoid the double jeopardy clause "by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Whether a statute states but one continuing offense depends on the intent of Congress. *Bell v. U.S.*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Here the statute in question, 18 U.S.C. § 641, states that "[w]hoever ... conceals, or retains [public property] with intent to convert it [and with knowledge] [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both." When Congress's will is undeclared, the ambiguity should be resolved in favor of lenity. *Bell*, 349 U.S. at 83, 75 S.Ct. at 622.

■ Nevertheless, it is clear that under *U.S. v. Carlton*, 475 F.2d 104 (5th Cir.), *cert. denied*, 414 U.S. 842, 94 S.Ct. 100, 38 L.Ed.2d 80 (1973), Kroesser has been charged with two different offenses. In *Carlton* the defendant had been convicted in the Southern District of Florida for the possession of counterfeit money in late January and early February 1971 in violation of 18 U.S.C. § 472. Shortly thereafter he was convicted in the Middle District of Florida for the possession of counterfeit money in the latter part of February 1971. The court upheld the second conviction

---

4. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) is not to the contrary. There Ashe was acquitted of robbing one of six participants in a poker game because the evidence was insufficient to identify him as one of the robbers. *Id.* at 438–39, 90 S.Ct. at 1191–92.

When Ashe was subsequently brought to trial for the robbery of a second participant, the Supreme Court ruled the prosecution barred under the double jeopardy clause. However, jeopardy had clearly attached in Ashe's first prosecution.

finding it a separate offense. Although the counterfeit money that was the subject of both indictments "was from the same issue," *id.* at 105, said the court, "[d]ifferent times and locations were charged." *Id.* at 107. *See also Ward v. U.S.,* 694 F.2d 654, 659 (11th Cir.1983) (receiving and possessing four stolen tractors all being transported together though bound for different destinations constitutes separate offenses under 18 U.S.C. § 659); *U.S. v. Stricklin,* 591 F.2d 1112, 1122–23 (5th Cir.) (one indictment charging possession of marijuana in New Mexico in August 1974 and second charging possession of marijuana in Texas in June and July 1972 charge different offenses), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

Here count I of the first indictment charged Kroesser with concealing and retaining notes in Seminole County in April 1982. Count II of the present indictment charges Kroesser with concealing and retaining notes in Fort Myers, in Lee County, in April 1980. Although the notes in both cases had been transported from Virginia together, they were not disposed of together. The Fort Myers notes were laundered in Nassau while the Seminole County notes remained two years later to be passed or laundered somewhere else. Under these circumstances, we find that two separate offenses were charged and that the double jeopardy clause was not violated.

### IV. The Speed Trial Act

■ Kroesser's final argument is that this case must be dismissed because it was not brought within the period required by § 3161(b) of the Speedy Trial Act. 18 U.S.C. § 3161 (1982). Section 3161(b) provides as follows:

(b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

Kroesser was arrested April 28, 1982 after a girl friend told the police about the stolen Federal Reserve Notes. Kroesser had assaulted her and the arresting officers told him this was what he was being arrested for. This was not the true reason, however, *Kroesser,* 731 F.2d at 1513–14, and he was indicted for concealing and retaining stolen property on May 5, 1982. The first of the superseded indictments in this case was not handed down until April 19, 1983. This appeal is from a July 6, 1983 indictment.

Section 3161(b) requires that any indictment making a charge must be filed within thirty days of the arrest "in connection with such charges." We do not decide whether this means that all charges "in connection with" an arrest must be brought within 30 days or whether only the first such charge must be so brought. *But see U.S. v. Mulherin,* 521 F.Supp. 824, 827 (S.D.Ga.1981) (so long as conspiracy charge is made within 30 days, substantive charge may be subsequently brought under 18 U.S.C. § 3161(b)), *aff'd,* 710 F.2d 731 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984). Even if the former construction applies, the charges in the case before us are not "in connection with" the April 28, 1982 arrest.[5]

That arrest was made in Sanford, Florida, in Seminole County, after the police learned that Kroesser had recently been hiding uncut Federal Reserve Notes in his Sanford apartment. After the arrest, the police further learned that these notes had been transferred to Kroesser's Winnebago, also in Sanford, and that Kroesser had hidden more currency in a Sanford storage facility.

The subsequent indictment that we now consider levied charges concerning conduct that occurred two years earlier in a different county with different cohorts and different Federal Reserve Notes being disposed of in a different fashion. Though the notes involved in both sets of charges came from the same original theft, we cannot say that on April 28, 1982 either the

---

5. The May 5, 1982 indictment would alone satis-

fy § 3161(b) under the latter construction.

warrant was issued or the arresting officers made their arrest in contemplation of such earlier conduct.

In these circumstances, we find no violation of the Speedy Trial Act.

The lower court is AFFIRMED.