**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph "Jo Jo" FITAPELLI, Vito Signorile, d/b/a Eagle Sanitation, Geraldo De Vivo, Suncoast Disposal, Inc., Donald Fowler, Thomas Kerrigan, Imperial Carting Associates, Inc., Carlo Di Nardi, d/b/a Solar Sanitation, Bernard Agostino, Vicenzo "Jimmy" Acquafredda, Defendants-Appellants.**

No. 84–3551.

United States Court of Appeals, Eleventh Circuit.

April 21, 1986.

Kerry H. Brown, Tampa, Fla., for Fitapelli.

Wayne J. Boyer, Leonard J. Mankin, Dunedin, Fla., for Signorile.

Ronnie G. Crider, Alan K. Smith, Clearwater, Fla., for De Vivo and Suncoast.

James D. Whittemore, Tampa, Fla., for Fowler, Kerrigan and Imperial.

Larry C. Hoffman, Clearwater, Fla., for DiNardi.

Robert Fraser, Tampa, Fla., for Agostino.

Carolyn J. House, Tampa, Fla., for Acquafredda.

David H. Runyan, Asst. U.S. Atty., Tampa, Fla., John J. Powers, III, Edward T. Hand, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for the U.S.

Before GODBOLD, Chief Judge, TJOFLAT, Circuit Judge and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

A grand jury indicted fourteen defendants on one count of violating § 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to fix prices and allocate customers in the garbage business in Pinellas County, Florida. The defendants were jointly tried on a superseding indictment and the jury found eight individual and two corporate defendants guilty. All convicted defendants have appealed and the district court has stayed all sentences pending review by this court. Each of the appellants has adopted his codefendants' arguments pursuant to Fed.R. App.P. 28(i). All points discussed have been properly preserved for appeal. We shall limit our discussion to the meritorious arguments raised below which require reversal.

A central theme of all of the appellants' briefs is that the indictment failed to plead, and the government failed to prove, the nexus between the defendants' illegal business activities and interstate commerce which is the *sine qua non* of establishing jurisdiction under § 1 of the Sherman Act. Jurisdiction may be proven under either or both of two theories: (1), the defendant's offending activities took place "in the flow of interstate commerce" (flow theory) and (2), the defendants general business activities had or were likely to have a "substantial effect on interstate commerce". (effect theory). *McClain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 241–46, 100 S.Ct. 502, 508–11, 62 L.Ed.2d 441 (1980); *Construction Aggregate Transport v. Florida Rock Industries*, 710 F.2d 752, 766–67 (11th Cir.1983) *(CAT)*; *Shahawy v. Harrison*, 778 F.2d 636, 640,

(11th Cir.1985); *Feminist Women's Health Center, Inc. v. Mohammed,* 586 F.2d 530, 539 n. 1 (5th Cir.1978); *cert. denied* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979); *United States v. American Service Corp.,* 580 F.2d 823, 825 (5th Cir.1978), *cert. denied* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979). The trial court charged the jury under both theories. Accordingly, we must examine the indictment and the evidence to see whether they have been sufficiently pleaded and proven.

In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated. *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1082 (5th Cir.) *cert. denied* 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978) (*Cadillac*).

■ There is no trick to pleading jurisdiction under the Sherman Act in a criminal case. The indictment, viewed as a whole and in a practical sense, must simply set forth the elements of the offense charged in order that the constitutional right against double jeopardy will be insured and the defendant may be informed of the accusations against him. *Cadillac,* 568 F.2d at 1082. The government's brief identifies three paragraphs from the superceding indictment upon which the defendants were tried. Those paragraphs state:

6. Imperial Carting Associates, Inc., Suncoast Sanitation, Inc., and Suncoast Disposal, Inc. were corporations engaged in business affecting interstate commerce.

7. The individual defendants and corporate defendants obtained substantial quantities of equipment and supplies from sources outside the State of Florida for providing waste disposal service.

8. The individual defendants and corporate defendants provided waste disposal service to customers whose solid waste was generated as a consequence of activities which were within the flow of interstate commerce.

Collectively, and when read in concert with the remainder of the indictment, the three paragraphs are sufficient to allege jurisdiction under § 1 of the Sherman Act and patently insufficient to allege that the defendants were operating "in the flow of commerce". Although the government argued below, and argues here that paragraph 8 above is sufficient to charge the flow theory, that paragraph, in plain language, alleges that the defendants' *customers* generated solid waste as a consequence of the *customers'* activities which were within the flow of interstate commerce. The allegations of paragraph 8 when read in the context of the whole indictment were sufficient to allege a possible effect on interstate commerce, see, *U.S. v. Cargo Service Stations,* 657 F.2d 676, 678–79 (5th Cir. Unit B 1981) *cert. denied* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1972), but were not even arguably sufficient to allege the flow theory. We are well aware that an allegation of jurisdiction under the flow theory may be "somewhat conclusory" and still withstand attack. *Cadillac,* 568 F.2d at 1081–82. However, the government's allegations of flow fall far short of any jurisdictional allegation in a Sherman Act case that we or our predecessor court have ever upheld before. (We further note that the allegations of the "effect" are, charitably speaking, barely adequate to sustain jurisdiction.) We therefore find the indictment fatally defective insofar as it supported the admission of evidence, jury instruction or argument on the flow theory.

■ Perhaps sensing the weakness of the indictment and its argument in defense of it, the government argues that any insufficiency was harmless error because the government and the district court both gave advance notice, through arguments and orders rendered prior to trial, that the flow theory would be presented to the jury and that appropriate instructions would be given. This is not a case in which the harmless error standard may be applied to a mere variance in the indictment. The court instructed the jury on a theory of jurisdiction which had not been charged by the grand jury. In charging the jury that they could find the defendants guilty under either or both theories the trial court mate-

rially amended the indictment and destroyed the defendants' right to be tried only on the charges against them. *United States v. Stirone*, 361 U.S. 212, 214, 80 S.Ct. 270, 271, 4 L.Ed.2d 252 (1960); *United States v. Bizzard*, 615 F.2d 1080, 1082 (5th Cir.1980). We therefore must reverse the convictions.[1]

■ Because all defendants have raised the question of the sufficiency of the evidence of jurisdiction to support their convictions, we must review this question to determine whether their Fifth Amendment protections against double jeopardy will be offended by retrial.[2] In addressing this question, we must view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the guilty verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *U.S. v. Bell*, 678 F.2d 547, 548 (5th Cir. Unit B 1982); *(en banc) aff'd* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Viewed even by this liberal standard, we cannot find sufficient evidence of jurisdiction to sustain the defendant's convictions under the flow theory. Although the government's brief recites a great deal of evidence which it would have this court interpret as placing the defendants' illegal activities in the flow of commerce, the greater part of the evidence presented was only probative of the affect theory. The only evidence which could even arguably support the flow theory is the fact that one of the defendants ordered containers from a fabricating company in Georgia, took delivery on those containers by a direct shipment from Georgia to Pinellas County, leased those containers to its customers

and billed them for the amount of garbage removed on a "per container" basis.

We must find the evidence insufficient to establish the flow of commerce theory, however. As a general rule, the flow of commerce from manufacturer to consumer stops when goods arrive at an intermediary (*e.g.* a wholesaler). There are three recognized exceptions to this general rule which apply to: (1) goods placed on special order on behalf of a particular customer, (2) goods ordered pursuant to contract to fulfill the needs of a particular customer, and (3), goods ordered to fill the anticipated needs of a particular customer. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943). See also, 16 Von Kalinowski, BUSINESS ORGANIZATIONS-Antitrust Laws and Trade Regulation § 4.03[2] (Matthew Bender 1983).

There is no evidence in the record submitted to this Court which would allow the jury to infer, rather than speculate, that the container orders fall within any of the three exceptions. *Cf., Cadillac*, 568 F.2d at 1083–85 (conviction upheld on evidence that uniforms were ordered to fill needs of identified customers). Accordingly, we hold that the government presented insufficient evidence of jurisdiction under the (uncharged) flow theory. However, this does not mean that jurisdiction was not proven. The record is replete with evidence that shows that the·· defendants purchased trucks, materials and supplies from out of state which were worth hundreds of thousands of dollars, that checks were drawn on out of state banks and mailed across state lines by out of state corporations, and that at least one of the customers directly

---

1. There is some question whether a corporation has a Fifth Amendment right to indictment under § 1 of the Sherman Act or whether the prosecution may proceed by information. See, *United States v. Armored Transport Inc.*, 629 F.2d 1313, 1318–19 (9th Cir.1980) *cert. denied* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981) (upholding conviction by construing defective indictment as an information). We find the allegations in this case insufficient to charge the flow theory under either form. Therefore, we need not reach the issue of whether corporate defendants must be indicted for prosecution under 15 U.S.C. § 1.

2. *United States v. Kroesser*, 750 F.2d 833, 836 (11th Cir.1985) which holds that the defendant may be charged on retrial for crimes which were not previously charged in the indictment under a "no prior indictment, no prior jeopardy" theory, is totally inapplicable to this case. Here, the crime was charged but one of the jurisdictional bases for prosecution was not. Double jeopardy would bar retrial if the evidence presented was insufficient. See, *U.S. v. Hayes*, 676 F.2d 1359 (11th Cir.1982) *cert. denied* 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982) (insufficiency of the evidence generally the only reason to bar retrial).

engaged in interstate commerce. As a matter of practical economics, a substantial relationship with interstate markets has been established and, therefore, jurisdiction has been proven under the effect theory. *CAT:* 710 F.2d at 767–68. Consequently, we hold that the Fifth Amendment prohibition against double jeopardy will not bar a second trial. See, *United States v. Fitzpatrick,* 581 F.2d 1221, 1224 n. 4 (5th Cir. 1978).[3]

We have reviewed the remaining points argued by appellants and find, for the reasons explained in the government's brief, that none of them present additional error which must be remedied or commented upon by this court. For the reasons stated above, we therefore REVERSE the defendants' convictions and REMAND the case to the lower court for further proceedings.

REVERSED and REMANDED.

---

**3.** Agostino is the only defendant who contends that there was insufficient proof of his involvement in the conspiracy. His argument is frivolous because it depends upon inferences drawn in his favor and against the verdict. We have reviewed the evidence according to the *Glasser* standard recited above and find it sufficient.