UNITED STATES of America, Plaintiff,

v.

ORS, INC. and Oahu Refuse Systems Co., Defendants.

Crim. No. 91–01500 DAE.

United States District Court, D. Hawaii.

Oct. 6, 1992.

Daniel A. Bent by Howard J. Parker and Barbara J. Nelson, Antitrust Div., Elliot Enoki, 1st Asst. U.S. Atty., for plaintiff.

Robert F. Miller, Foley, Maehara, Judge, Nip & Chang, Benjamin B. Cassiday, III, Honolulu, Hawaii, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

DAVID ALAN EZRA, District Judge.

This court heard defendant's motion on September 1, 1992. The court heard additional argument on October 5, 1992. Barbara J. Nelson, Esq. and Howard J. Parker, Esq. appeared on behalf of the government; Robert F. Miller, Esq., Susan M. Ichinose, Esq. and Benjamin B. Cassiday, III, Esq. appeared on behalf of defendant ORS, Inc. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS defendant ORS, Inc.'s motion to dismiss the indictment.

## BACKGROUND

On September 11, 1991, a federal grand jury returned an indictment against the defendants, ORS, Inc. ("ORS") and Oahu Refuse Systems Co. ("Oahu Refuse"), charging them with conspiracy to restrain trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. In particular, the indictment alleges that beginning as early as December 1984, and continuing thereafter through at least early 1987, the defendants and others participated in a conspiracy to divide the Oahu market for commercial front-loader waste disposal services by allocating among themselves customers and territories for such services. Indictment ¶ 2.

The only portion of the indictment that addresses interstate commerce is contained in section IV of the indictment:

## TRADE AND COMMERCE

10. The defendants' business enterprise is one of the largest providers of commercial waste disposal services on the Island of Oahu. The revenues of ORS, Inc. from the provision of waste disposal service were $2.9 million in 1984; $5.1 million in 1985; and $4.8 million in 1986.

11. The business activities of the defendants and co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce.[1]

On July 31, 1992, ORS[2] filed a motion to dismiss indictment for failure to allege sufficient facts regarding the necessary element of interstate commerce. On August 24, 1992, the government filed a supplementary voluntary bill of particulars regarding interstate commerce.[3] In that document, the government described at length the alleged interstate activities of ORS. In particular, the government contends that it will present evidence that:

defendant and co-conspirators, in order to provide refuse service on Oahu, spent substantial sums to purchase trucks and equipment from sources outside the State of Hawaii, financed such trucks through sources outside the State of Hawaii, spent substantial sums to purchase insurance and bid bonds from sources outside the State of Hawaii, sent billings for service on Oahu to customer's offices located outside the State of Hawaii, picked up trash at Honolulu International Airport (which originated outside the State of Hawaii), and sent substantial payments, labeled as "consulting fees," to the owners of defendant, located outside the State of Hawaii.

1. The court notes that portions of the aforementioned paragraphs, as well as other paragraphs, of the Indictment were the subject of defendants' motion to strike surplusage. While the court granted in part that motion, it does not affect the paragraphs at issue in this motion.

2. Defendant Oahu Refuse has been voluntarily dismissed by the government.

## DISCUSSION

Rule 7 of the Federal Rules of Criminal Procedure describes the procedural and substantive requirements for criminal indictments. With respect to the general nature and contents of the indictment, Rule 7 provides that the "indictment ... shall be a plain, concise and definite written statement of the *essential facts* constituting the offense charged." Fed.R.Cr.P. 7(c)(1) (emphasis added).

■ The first thing to note is that in determining the sufficiency of the indictment, the court looks only to the four corners of the indictment and *not* to the allegations in the supplementary voluntary bill of particulars filed by the government. The Ninth Circuit has stated:

We begin our analysis stating the established rule that a bill of particulars cannot save an invalid indictment. *Russell v. United States*, 369 U.S. 749 [82 S.Ct. 1038, 8 L.Ed.2d 240] (1962); *United States v. Keith*, 605 F.2d 462, 464 (9th Cir.1979); *United States v. Nance*, 533 F.2d 699, 701 (D.C.Cir.1976). The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. *Russell*, 369 U.S. at 771 [82 S.Ct. at 1051] (citing *Stirone v. United States*, 361 U.S. 212, 218 [80 S.Ct. 270, 273–74, 4 L.Ed.2d 252] (1960)). If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented.

*United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir.1979) (citing *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)).

3. The government had previously filed a voluntary bill of particulars and a first amended voluntary bill of particulars. Neither of these documents, however, contained information relating to interstate commerce.

■ An indictment must provide the defendant with an adequate description of the charge to allow him to prepare his defense, and to allow him to plead double jeopardy against a second prosecution. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974).[4] On this basis, the Ninth Circuit has affirmed the use of conclusory—or notice—pleading.

In *United States v. Miller,* 771 F.2d 1219, 1225–27 (9th Cir.1985), the defendants were charged with fixing the prices of retail gasoline in Idaho, in violation of § 1 of the Sherman Act. The defendants argued that the indictment failed to allege an overt act and was factually insufficient. The Ninth Circuit held the indictment was sufficient because a Sherman Act conspiracy does not require an overt act and because the indictment had sufficient particularity to give the defendants adequate notice of the charges against them. *Id.* at 1226. Although the defendants complained that the indictment contained few facts other than the situs of the conspiracy and the names of the co-conspirators, the court found it had a considerable amount of factual detail and was, thus, sufficient. *Id.* at 1227.

Similarly, *United States v. Scott,* 884 F.2d 1163 (9th Cir.1989), held that an indictment that tracks the language of the statute is sufficient "if the words of the statute 'fully, directly, and expressly set forth all the elements necessary to constitute the offense intended to be proved.'" *Id.* at 1166 (citing *United States v. Dadanian,* 818 F.2d 1443, 1447 (9th Cir.1987)). The defendant in *Scott* was charged with "intent to extort ... money or other thing of value." He argued the

indictment was insufficient because he could be convicted if he intended to extort money *or* something else. The court rejected this argument, noting that the indictment used the same language as the statute. *Id.* The defendant also argued the indictment was insufficient because it failed to describe what "thing of value" he intended to extort. The court noted that the indictment was clear in charging the defendant with attempting to extort dismissal of pending felony counts against him. *Id.*

Finally, in *United States v. Zavala,* 839 F.2d 523 (9th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988), the court held that an indictment that follows statutory language is generally sufficient "if the statute sets forth the elements of the crime, although following statutory language is not a cure-all." *Id.* at 526 (citations omitted). The defendant in *Zavala* was charged with, *inter alia,* the unlawful use of a communications facility. The counts at issue listed dates, times, and persons with whom the defendant spoke on the telephone in committing violations of several federal narcotics laws. Although these counts did not state what narcotic was at issue, other counts of the indictment specifically charged the defendant with conspiracy to import and distribute cocaine and possession of cocaine. Taken as a whole, the Ninth Circuit held, "the indictment here, although not a model, is sufficient." *Id.*

■ In the present case, ORS is charged with violating § 1 of the Sherman Act which states in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, *in restraint of*

---

4. ORS argues an indictment has four requirements. In a case subsequent to *Hamling,* the Ninth Circuit explained:

[An inquiry into the validity of the Indictment] must focus upon whether the indictment provides "the substantial safeguards" to criminal defendants that indictments are designed to guarantee. *Russell v. United States,* 369 U.S. 749, 763 [82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240] (1962). Pursuant to this purpose, an indictment must furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead double jeopardy

against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Russell,* 369 U.S. at 763, 768 n. 15 [82 S.Ct. at 1046–47, 1049 n. 15]; *United States v. Keith,* 605 F.2d 462, 464 (9th Cir.1979); *United States v. Pheaster,* 544 F.2d 353, 360 (9th Cir.1976). *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979) (reversing defendants' conviction on the basis of insufficient factual pleading in indictment; indictment merely tracked statutory language without providing specific factual allegations). The government argues that *Hamling* sets forth only two requirements of an indictment. In any event, as discussed below, the indictment in this case fails even under *Hamling.*

*trade or commerce among the several States,* or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (emphasis added). The requirement that the defendants' conspiracy restrain interstate commerce is a necessary jurisdictional requirement for a § 1 violation. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). This jurisdictional requirement may be satisfied by alleging that defendant's actions actually are *in* the flow of interstate commerce (the "in commerce" or "flow of commerce" theory) or that defendant's activities, although wholly local in nature, nevertheless substantially affect interstate commerce (the "effect on commerce" theory). *Id.* at 241–42, 100 S.Ct. at 508–09. The indictment in this case alleges both theories. The government, however, has appropriately asserted it will argue only the "effect on commerce" theory.

■ The government strenuously argues that the indictment accords ORS sufficient notice of the charge against it and protects against double jeopardy, in accordance with *Hamling.* Because the indictment tracks the language of the Sherman Act, the government contends it is sufficient. Nevertheless, the *Hamling* Court held that the general description of the offense "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense." *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590 (1974).

■ The allegation of jurisdiction in the indictment in this case contains no facts and circumstances. The Supreme Court has held that:

**5.** In *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), a private antitrust suit, the Supreme Court indicated it is a factual question that must be pled with specificity. It held:

Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce.

*Id.* at 242, 100 S.Ct. at 509. Although *McLain* is a civil case, the Court's explanation of the juris-

Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

*Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The *Hamling* Court approved this language, but found that the definition of obscenity (the issue in *Hamling* ) is a question of law and, thus, can be alleged generally. In contrast, as the government concedes, the question of whether a wholly intrastate act had a substantial effect on interstate commerce is a question of fact, or a mixed question of fact and law. *Las Vegas Merchant Plumbers Assoc. v. United States,* 210 F.2d 732, 740 (9th Cir. 1954).[5] As such, there must be *some* basic factual allegations in the indictment.

■ Ninth Circuit law is in accord. There are very few cases, however, that expressly address the level of factual specificity which is required in an indictment with respect to allegations of interstate commerce under the Sherman Act.[6] The government cites *Las Vegas Merchant Plumbers Assoc. v. United States,* 210 F.2d 732 (9th Cir.), *cert. denied,* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954), as approving the use of conclusory allegations of interstate commerce in Sherman Act prosecutions. There, the Ninth Circuit upheld an indictment that alleged that the effect of the conspiracy was to "directly, unreasonably, arbitrarily and unlawfully restrain and obstruct the flow of plumbing and heating supplies in interstate commerce into Southern Nevada." *Id.* at 741. Even if this were the only factual allegation made by the government, it would be more than the in-

dictional requirements of the Sherman Act are equally applicable here.

**6.** The standard for criminal indictments is stricter than for civil complaints. As stated above, the indictment must allege, *within its four corners,* sufficient factual particularity. *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979). A court in a civil case may consider pleadings beyond the complaint to determine if there is an effect on commerce. *See McLain,* 444 U.S. 232, 100 S.Ct. 502. Thus, the cases cited by the parties discussing the standard in civil cases for alleging an affect on interstate commerce are not discussed.

dictment in the instant case. That is not the case, however. The indictment in *Las Vegas* has no less than five other paragraphs alleging that defendants "are conduits through which plumbing and heating supplies manufactured in and shipped from States of the United States other than the State of Nevada, are sold and distributed to the consuming public in Southern Nevada." *Id.* at 738 n. 2.

In contrast, the indictment against ORS makes a *single* allegation that "the business activities of the defendants ... substantially affected interstate trade and commerce." There is not a single fact in the indictment to show that ORS's waste disposal services on the island of Oahu had *any* effect on interstate commerce. Moreover, the remainder of the indictment suggests the contrary. Relevant paragraphs of the indictment provide:

> 3. During the period covered by this Indictment, ORS, Inc. and Oahu Refuse Systems Co. were affiliated. Both were part of a single business enterprise providing commercial waste disposal services on the Island of Oahu.
>
> . . . .
>
> 6. ... During the period covered by this Indictment, ORS, Inc. and Oahu Refuse Systems Co. were engaged in the waste disposal business on the Island of Oahu.
>
> . . . .
>
> 10. ... The defendants' business enterprise is one of the largest providers of commercial waste disposal services on the Island of Oahu.
>
> . . . .
>
> 12. The combination and conspiracy charged in this Indictment was carried out, in part, within the District of Hawaii within the five years preceding the return of this Indictment.

Although the government argues that there is substantial evidence that ORS purchased equipment, financed equipment, purchased insurance, and sent "consulting fees" out of the State of Hawaii, *none* of this was alleged in the indictment.

Other cases are in accord. In *United States v. Chrysler Corp.*, 180 F.2d 557 (9th Cir.1950), the district court dismissed an indictment for failing to allege facts supporting the interstate commerce requirement. The Ninth Circuit held that in determining the sufficiency of an indictment, the court must ask:

> whether there can be found *within the four corners of the indictment* sufficient allegations to establish that the goods in question *moved in interstate commerce* from the manufacturer outside the state of Washington to the consumers within the state of Washington without coming to 'rest'.

*Id.* at 558 (emphases added).

In *United States v. Fitapelli*, 786 F.2d 1461 (11th Cir.1986), the defendants were convicted of conspiring to fix prices and allocate customers in the waste disposal business in violation of § 1 of the Sherman Act. On appeal, the defendants argued that the indictment was insufficient because it failed to allege the nexus between defendants' business and interstate commerce. *Id.* at 1462. The indictment first alleged that the defendants' business had an effect on interstate commerce. The following paragraph charged that the defendants "obtained substantial quantities of equipment and supplies" from out of the state. The final paragraph on this issue alleged that the defendants provided waste disposal service to customers whose waste was generated "as a consequence of activities which were within the flow of interstate commerce." *Id.* at 1463.

The *Fitapelli* court held that the indictment was "patently insufficient" to sustain jurisdiction under the flow of commerce theory and, "charitably speaking, barely adequate" to sustain jurisdiction under the effect on commerce theory. *Id.* Because the district court allowed evidence and argument on the flow theory and instructed the jury that it could convict the defendants under either theory, the Eleventh Circuit reversed the convictions. *Id.*[7]

---

7. The court further stated:

> This is not a case in which the harmless error standard may be applied to a mere variance in the indictment. The court instructed the jury

Similarly, in *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078 (5th Cir.), *cert. denied*, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978), the defendant argued the indictment failed to allege a sufficient restraint on interstate commerce in violation of § 1 of the Sherman Act. The indictment charged that the defendant regularly obtained rental uniforms for its customers' use that were manufactured outside the state. It also alleged that the defendant purchased "substantial quantities" of supplies and materials from outside the state. *Id.* at 1081–82. Based on these specific factual assertions in the indictment, the court held the allegations in the indictment were sufficient to allege a restraint on trade under the flow of commerce theory. *Id.* at 1082. *Accord, United States v. American Serv. Corp.*, 580 F.2d 823 (5th Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979).

In each of the above cases, there was at least one factual allegation that the defendant's business was "in the flow of" or "affected" interstate commerce. In contrast, the indictment in the instant case is absolutely barren of any facts alleging that ORS's business activities have an effect on interstate commerce. Because an allegation of an effect on interstate commerce is a necessary jurisdictional requirement under the Sherman Act, it must be pled with more specificity than was present here. Therefore, the court finds the indictment in this case is fatally defective.

## CONCLUSION

For the reasons stated above, the court GRANTS ORS's motion to dismiss indictment. The indictment is dismissed without prejudice.

IT IS SO ORDERED.

on a theory of jurisdiction which had not been charged by the grand jury. In charging the jury that they could find the defendants guilty under either or both theories the trial court materially amended the indictment and destroyed the defendants' right to be tried only on the charges against them.

*Id.* at 1463–64 (citing *Stirone v. United States*, 361 U.S. 212, 214, 80 S.Ct. 270, 271–72, 4 L.Ed.2d 252 (1960); *United States v. Blizzard*, 615 F.2d 1080, 1082 (5th Cir.1980)).