## UNITED STATES v. CHRYSLER CORPO-RATION PARTS WHOLESALERS, NORTHWEST REGION et al.

### No. 12236.

United States Court of Appeals
Ninth Circuit.
March 1, 1950.

Herbert A. Bergson, Assistant Atty. Gen., J. Charles Dennis, U.S. Atty., Seattle, Wash., Charles L. Whittinghill, Sp. Asst. to Atty. Gen., Richard E. Guggenheim, Joe F. Nowlin, Aute L. Carr, John P. Kelly, Atty., Dept. of Justice, Washington, D. C., for appellant.

Bogle, Bogle & Cates, Robert W. Graham, J. Tyler Hull, Seattle, Wash., for appellees, Commercial Automotive Service, F. L. Hawkins and C. J. Brush.

Eggerman, Rosling & Williams, Edward L. Rosling and Robert G. Moch, Seattle, Wash., for appellees S. L. Savidge, Inc., W. G. Powell and John Munster.

Eisenhower, Hunter & Ramsdell, Tacoma, Wash., for appellees, Winthrop Motor Co., G. W. Miller and Stanley Peterson.

Ferguson, Burdell & Armstrong, Seattle, Wash., for appellees Chrysler Corp. Parts Wholesalers and MoPar Club.

Randall & Danskin, C. D. Randall, Spokane, Wash., for appellees Riegel Brothers, D. R. Riegel and T. H. Naismith.

Tracy Griffin and Kenneth Short, Seattle, Wash., for appellees, American Automobile Co., S. Sayres and R. W. Hanson.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

■ An indictment was returned in the United States District Court for the Western District of Washington purporting to charge appellees with conspiring to violate the Sherman Act, 15 U.S.C.A. § 1. Appellees moved in the trial court to dismiss on the ground that no criminal offense was alleged in that the indictment failed to state a conspiracy in restraint of trade either "in" interstate commerce or "affecting" interstate commerce. The trial court granted the motion and dismissed the indictment. We have then for determination, as did the trial court, the question of whether there can be found within the four corners of the indictment sufficient allegations to establish that the goods in question moved in interstate commerce from the manufacturer outside the state of Washington to the consumers within the state of Washington without coming to "rest" in the sense that the flow of the commerce was stopped before the goods reached the consumer and, further, whether the impact of the alleged conspiracy on the sale and distribution of the goods was such as to impede the free and uninterrupted flow thereof in interstate commerce. In considering the sufficiency of the indictment we should keep in mind the rule that all allegations, well pleaded, must be taken as true.

In substance, the indictment alleges that two of the defendants are unincorporated trade associations comprising persons and concerns operating almost exclusively in the state of Washington, who are authorized by the Chrysler Corporation to sell Chrysler replacement parts and engines. The five corporate defendants, who are the authorized Chrysler parts wholesalers in the said state, are all members of one or both of those trade associations, and the ten individual defendants are each actively engaged in the management of one of the corporate defendants and of the associations of which it is a member. The Chrysler Corporation manufactures replacement parts in Michigan, Georgia, Kansas, Delaware and California. Some of these parts, known as Class A parts, are in competition with similar parts manufactured by other companies. Class B parts are manufactured only by Chrysler. Chrysler sells both classes of parts to the corporate defendants who, in turn, sell more than 90 per cent of the Chrysler replacement parts used in the state of Washington. The wholesalers are independent entrepreneurs who purchase the parts outright and resell them as their own property. The resales are made to authorized dealers in Chrysler automobiles, independent garages and repair shops, operators of taxicab or truck fleets and retail customers. At various specified times and places the defendants have successfully combined and conspired to raise and fix wholesale prices on parts by specified percentages, to decrease and fix wholesale discounts on parts by special percentages and to compel authorized dealers to adhere to the prices and discounts so fixed.

The allegations pertaining to the connection between the alleged conspiracy and interstate commerce are as follows:

"10. * * * In anticipation of, and in response to, orders and demands from customers in the state of Washington of the classes described in paragraph 8 hereof, the corporate defendants regularly order, purchase and procure the shipment of Chrysler replacement parts and engines from the Chrysler plants located in the states listed in paragraph 6 hereof, and resell said parts and engines to said customers in the state of Washington. Said corporate defendants, and authorized Chrysler dealers in the state of Washington to whom they sell, serve as a conduit through which said Chrysler replacement parts and engines move in a regular, con-

tinuous and uninterrupted flow to the ultimate users of said parts and engines in the state of Washington.

"11. * * * The purchase and resale of Chrysler replacement parts and engines by the corporate defendants as the authorized Chrysler wholesalers for the state of Washington, and by the authorized Chrysler dealers to whom they sell, is an integral part of and incidental to the uninterrupted movement of said substantial volume of Chrysler replacement parts and engines in interstate commerce from the Chrysler plants located in the states listed in paragraph 6 hereof, to the ultimate users of said replacement parts and engines in the state of Washington."

"21. The purpose, intent and necessary effect of the aforesaid combination and conspiracy has been and is:

(a) To eliminate all price competition among defendants and the authorized Chrysler dealers to whom they sell, in the sale of Chrysler replacement parts and engines shipped in interstate commerce into the state of Washington and sold and distributed therein, and to deny the consuming public in the state of Washington the benefits of such competition.

 *  *  *  *  *  *

(c) To directly, substantially, and unreasonably burden and restrain the flow in interstate trade and commerce of Chrysler replacement parts and engines from the states of Michigan, Georgia, Kansas, Delaware and California to the state of Washington, by means of the aforesaid elimination of price competition, and the aforesaid enhancement, fixing and maintenance of prices."

■ If it can be determined that the alleged conspiracy has a sufficiently close relation to interstate commerce, then such conspiracy constitutes a violation of the Sherman Act, a conspiracy to fix prices being an unreasonable restraint of trade *per se*. United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; United States v. Socony-Vacuum Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129.

■ In enacting the Sherman Act, Congress exercised the full extent of its commerce power. United States v. Frankfort Distilleries, 324 U.S. 293, 298, 65 S.Ct. 661, 89 L.Ed. 951; United States v. Southeastern Underwriters Association, 322 U.S. 533, 558, 64 S.Ct. 1162, 88 L.Ed. 1440.

■ We conclude that paragraph 10 of the indictment contains a sufficient allegation to charge that at least part of the trade restrained by the alleged conspiracy is in interstate commerce. Effect must be given to the allegation that "replacement parts and engines move in a continuous and uninterrupted flow to the ultimate users of said parts and engines in the state of Washington." Appellees contend that said allegation is no more than a conclusion of law. Taken with other allegations we think it is a statement of an ultimate fact.

In Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, the question was whether, for purposes of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., certain employees of a wholesale paper company who worked in a warehouse from which shipments were made to customers within the same state were engaged in interstate commerce where the goods shipped had been brought in from outside the state. It was held that where the goods had been procured with the intention of using them to fill specific prior orders from customers, the temporary pause at the warehouse did not prevent the goods from being in interstate commerce during their entire journey from outside the state to the customer. Certain other goods which were procured in accordance with prior contracts or understandings with specific customers were also held to remain in interstate commerce until reaching those customers. The goods ordered without prior orders or understandings, however, were held to lose their interstate status on arrival at the warehouse, although the Court added: "We do not mean to imply that a wholesaler's course of business based on anticipation of needs of specific customers, rather than on prior orders or contracts, might

not at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods 'in commerce' within the meaning of the Act." 317 U.S. 564, 570, 63 S.Ct. 336. Paragraph 10 alleges: "In anticipation of, and *in response to,* orders and demands from customers in the state of Washington * * * the corporate defendants regularly order, purchase and procure the shipment of Chrysler replacement parts and engines from the Chrysler plants located [outside the state] and resell said parts and engines to said customers in the state of Washington." (Italics ours.) The plain meaning of this allegation is that the defendants make specific procurements of parts from outside the state with the intention of using those parts to fill specific prior orders of customers or to supply specific customers in accordance with prior understandings. This meaning is emphasized by the allegation that the defendants serve as a conduit for a regular, continuous and uninterrupted flow to the ultimate consumers. Under the criteria laid down in the Jacksonville Paper Company case, supra, the parts so procured clearly remain in interstate commerce after leaving the defendants, and any conspiracy to restrain their free movement between the defendants and the consumers violates the Sherman Act.

The goods procured "in anticipation of" orders and demands, however, might fall short of the continuity of movement necessary to keep them in interstate commerce. We look, therefore, to other allegations to determine whether there appears some other basis on which the alleged conspiracy relating to these alleged transactions is brought within the scope of the Sherman Act.

■ It is well established that the commerce power of Congress, and the Sherman Act, which is a complete exercise of that power, extends to intrastate transactions which substantially affect interstate commerce. Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. We think that paragraph 21(c) of of the indictment sufficiently alleges that the alleged price fixing conspiracy in its entirety had a substantial effect on interstate commerce within the scope of the Sherman Act. The allegation is not, as appellees urge, a mere conclusion of law, for it incorporates and specifies particular acts which are alleged to bring about the substantial effect. Restraints on retail sales of goods within a state which were purchased outside the state have been held to so affect interstate commerce as to be within the scope of the commerce power and the Sherman Act. United States v. General Motors, 7 Cir., 121 F.2d 376, 401–402; cf., N.L.R.B. v. Van DeKamp's, 9 Cir., 152 F.2d 818. "The control of the handling, the sales and the prices at the place of origin * * * or in the state of destination * * * may operate directly to restrain and monopolize interstate commerce." Local 167 v. United States, 291 U.S. 293, 297, 54 S.Ct. 396, 398, 78 L.Ed. 804. The allegations are sufficient. Whether or not the facts distinguish the business of the appellees from that of the ordinary wholesalers of goods can best be determined when those facts are developed. We are not concerned with that question at this time.

The order dismissing the indictment is reversed.