UNITED STATES of America,
Plaintiff–Appellant,

v.

ORS, INC., et al., Defendant–Appellee.

No. 92–10659.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 3, 1993.*

Decided June 30, 1993.

Andrea Limmer, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Susan M. Ichinose, Foley, Maehara, Judge, Nip & Chang, Honolulu, HI, for defendant-appellee.

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Before: FARRIS, POOLE, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

A grand jury indicted ORS, Inc., under § 1 of the Sherman Act for conspiring to allocate territories and customers in the refuse collection business on the Island of Oahu. The district court dismissed the indictment. We have jurisdiction pursuant to 18 U.S.C. § 3731. We affirm.

## I. Facts

On September 11, 1991, a grand jury sitting in the District of Hawaii indicted ORS, Inc., and Oahu Refuse Systems Co. for conspiring to divide the market for commercial waste disposal service on the Island of Oahu in violation of § 1 of the Sherman Act (15 U.S.C. § 1 (1992)).[1] On July 20, 1992, the district court granted the government's motion voluntarily to dismiss the indictment as to Oahu Refuse. Subsequently, ORS moved to dismiss the indictment against it for failing to allege facts that showed a nexus between ORS's business activities and interstate commerce.[2] The district court granted the motion. 825 F.Supp. 255. The government appeals.

## II. Standard of Review

■ We review de novo the legal sufficiency of an indictment. *United States v. Schmidt,* 947 F.2d 362, 369 (9th Cir.1991).

## III. Discussion

Rule 7 of the Federal Rules of Criminal Procedure describes the procedural and substantive requirements for criminal indictments. With respect to the general nature and contents of an indictment, Rule 7 provides that an "indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1).

■ Generally, an indictment is sufficient if it sets forth the elements of the offense charged so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Schmidt,* 947 F.2d at 369.[3] "The government need only allege the 'essential facts necessary to apprise a defendant of the crime charged' and not its theory of the case." *Id.* (quoting *Buckley,* 689 F.2d at 897).

■ For there to be a Sherman Act violation, the defendant's business activities must be "in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This requisite relationship to interstate trade or commerce is not only an element of the alleged antitrust offense, but also a necessary jurisdictional requirement. *See McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980) ("[J]urisdiction may not be invoked under that statute [the Sherman Act] unless the relevant aspect of interstate commerce is identified....").[4]

1. Section 1 of the Sherman Act provides that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

2. In particular, the indictment merely alleged that "[t]he business activities of the defendants and co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce."

3. " 'Two corollary purposes of an indictment are: (1) to ensure that the defendants are being prosecuted on the basis of the facts presented to the grand jury, and (2) to allow the court to determine the sufficiency of the indictment.' "

*Schmidt,* 947 F.2d at 369 (quoting *United States v. Buckley,* 689 F.2d 893, 896 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983)).

4. The interstate commerce requirement can be satisfied under either the "in commerce" theory or the "effect on commerce" theory. *McLain,* 444 U.S. at 242, 100 S.Ct. at 509. Although the indictment in this case alleges both theories, the government has asserted that it will argue only the "effect on commerce" theory. To meet the "effect on commerce" test, the government need only allege that ORS's business activities have a substantial effect on interstate commerce, not the "more particularized showing" that the alleged illegal conduct has a substantial effect on inter-

To meet this jurisdictional requirement, more is required than a mere allegation of a relationship to interstate trade or commerce. "[I]t is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce." *Id.* at 242, 100 S.Ct. at 509. Instead, the activities must "be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved," *id.* at 246, 100 S.Ct. at 511 (citation omitted), because "one of the requisites of a cause of action is the existence of a demonstrable nexus between the defendants' activity and interstate commerce." *Id. See also Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 818–19 (9th Cir.) ("There must be a 'sufficient nexus' between the activity and interstate commerce so that it can be said 'as a practical matter of economics' there is 'a not insubstantial effect on the line of commerce involved.' "), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982).

Although both *McLain* and *Turf Paradise* were civil antitrust cases, the requirement of a "demonstrable nexus" or "sufficient nexus" applies equally in criminal antitrust cases. Both of the Ninth Circuit cases that have considered the issue indicate that more than a bare allegation that the defendant's business activities relate to interstate trade or commerce is required if an indictment is to establish Sherman Act jurisdiction. *See, e.g., Las Vegas Merchant Plumbers Ass'n v. United States,* 210 F.2d 732 (9th Cir.), *cert. denied,* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954); *United States v. Chrysler Corp. Parts Wholesalers,* 180 F.2d 557 (9th Cir.1950). For example, the *Las Vegas* court upheld an indictment that alleged that the defendants were "conduits through which plumbing and heating supplies manufactured in and shipped from States of the United States other than the State of Nevada, are sold and distributed to the consuming public in Southern Nevada." *Las Vegas,* 210 F.2d at 738 n. 2. Similarly, the *Chrysler* court upheld an indictment that alleged that "[t]he Chrysler Corporation manufactures replacement parts in Michigan, Georgia, Kansas, state commerce. *Id.* at 242–43, 100 S.Ct. at

Delaware and California. . . . Chrysler sells both classes of parts to the corporate defendants who, in turn, sell more than 90 per cent of the Chrysler replacement parts used in the state of Washington." *Chrysler,* 180 F.2d at 558.

Other circuits are in accord. For example, in *United States v. Fitapelli,* 786 F.2d 1461 (11th Cir.1986), the defendants challenged their convictions under § 1 of the Sherman Act because the indictment failed sufficiently to allege the nexus between the defendants' business and interstate commerce. The indictment alleged first that the defendants' business had an effect on interstate commerce. *Id.* at 1463. It alleged second that the defendants "obtained substantial quantities of equipment and supplies from sources outside the State. . . ." *Id.* It alleged third that the defendants' customer's waste was generated "as a consequence of activities which were within the flow of interstate commerce." *Id.*

The court concluded that the indictment was "not even arguably sufficient to allege the flow theory." *Id.* The court further stated that "the government's allegations of flow fall far short of any jurisdictional allegation in a Sherman Act case that we or our predecessor court have ever upheld before." *Id.* Most importantly for our purpose, with respect to the "effect" theory, the court concluded that "the allegations of the 'effect' are, charitably speaking, barely adequate to sustain jurisdiction." *Id.*

Similarly, in *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978), the defendant argued that the indictment failed to allege a sufficient effect on interstate commerce under § 1 of the Sherman Act. The indictment charged that the defendant regularly obtained rental uniforms that were manufactured outside the state for its customers' use. *Id.* at 1081–82. It also alleged that the defendant purchased "substantial quantities" of supplies and materials from outside the state. *Id.* The court held that these allegations

509–10.

sufficiently alleged a restraint on trade under the flow of commerce theory. *Id.* at 1082.

In no reported case has a court been confronted with an indictment as barren as the one before us. Aside from the bare allegation that "[t]he business activities of the defendants ... were within the flow of, and substantially affected, interstate trade and commerce," this indictment discusses only wholly intrastate activities. Compared to the indictments in *Las Vegas, Chrysler, Fitapelli,* and *Cadillac,* this indictment is utterly conclusory as to how, when, or where ORS's business activities had any contact with or effect upon interstate trade or commerce.[5] In fact, it fails even to rise to the level of the indictment held "barely adequate" in *Fitapelli.*

Nevertheless, the government argues that *United States v. Diecidue,* 603 F.2d 535 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980), supports its contention that an indictment can be conclusory with respect to the relationship to interstate trade or commerce. In *Diecidue,* a RICO case, the defendants challenged the indictment because it alleged the effect on interstate commerce only in conclusory terms, which would allow the government unfettered discretion in choosing facts with which to prove it at trial. *Id.* at 547.

The Fifth Circuit rejected the challenge, specifically holding that the interstate trade or commerce element of the charged offense could be alleged in conclusory terms. First, the court concluded that the indictment satisfied its purpose of informing the defendants of the charges so as to allow them to plead double jeopardy.

> Clearly the indictment does not subject defendants to the danger of being retried for the same participation with the same enterprise on merely a different theory of effect on interstate commerce. Nor can we conclude that defendants were hampered in the preparation of their defenses

or that the grand jury might not have charged the offenses of which defendants were convicted.

*Id.* Moreover, the court concluded that the nature of the omissions weighed against finding the indictment insufficient.

> The distinction is that between a defendant's constitutional right to know *what* offense he is charged with and his need to know the evidentiary details which will be used to establish his commission of that offense.

*Id.* (emphasis in original). Finally, the court concluded that more fully elucidating the effect on interstate commerce would not have contributed anything of significance to the indictment.

> [A]n explicit discussion of the enterprise's effect on interstate commerce would contribute virtually nothing to defendants' understanding of the nature of the offenses charged....

*Id.* *See also United States v. Williams,* 679 F.2d 504, 509 (5th Cir.1979) (extending to Hobbs Act cases the *Diecidue* holding that the interstate commerce element could be alleged in conclusory terms under RICO), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 963 (1983); *United States v. Boston,* 718 F.2d 1511, 1515 (11th Cir.1983) ("We are persuaded that it is not necessary for the indictment in a Hobbs Act case to allege the exact nature of the interference with commerce."), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984).

Admittedly, the reasoning of *Diecidue* is powerful. Here, as in *Diecidue,* the indictment would not seem to subject ORS to the danger of being retried for the same conduct on merely a different theory of effect on interstate trade or commerce. Nor would elaboration on the effect on interstate trade or commerce seem to contribute anything to ORS's understanding of the nature of the offense charged. Nevertheless, we are

---

5. The government argues that its bill of particulars, filed after ORS's challenge to the indictment was registered, elucidates the effect on interstate trade or commerce. However, because it is clear that the sufficiency of an indictment must be determined from the indictment itself, *see, e.g., United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979) ("We begin our analysis stating the established rule that a bill of particulars cannot save an invalid indictment.... If a bill of particulars were allowed to save an indictment, the role of the grand jury as intervenor would be circumvented.") (citations omitted), we reject this argument.

bound by the Supreme Court's statements that "jurisdiction may not be invoked under that statute [the Sherman Act] unless the relevant aspect of interstate commerce is identified," *McLain*, 444 U.S. at 242, 100 S.Ct. at 509, and that "one of the requisites of a cause of action is the existence of a demonstrable nexus between the defendants' activity and interstate commerce." *Id.* at 246, 100 S.Ct. at 511.

That *McLain* was a civil antitrust case and this is a criminal antitrust case is an insufficient distinction. First, a restraint on interstate trade or commerce is equally a jurisdictional requirement in criminal as in civil Sherman Act cases. *See, e.g., Cadillac*, 568 F.2d at 1082 ("Under Section 1 of the Sherman Act, two theories may be used to satisfy the requisite and *jurisdictional* interstate commerce nexus.") (emphasis added). Second, in a civil case, a court may consider pleadings beyond the complaint to determine if there is a sufficient relationship to interstate trade or commerce, *McLain*, 444 U.S. at 245, 100 S.Ct. at 510; *Turf Paradise*, 670 F.2d at 819, while in a criminal case, a court's consideration is restricted to the indictment itself. *Cecil*, 608 F.2d at 1296. If anything, then, more is required in a criminal indictment than in a civil complaint to establish Sherman Act jurisdiction.

## IV. Conclusion

Accordingly, we conclude that more than the bare allegation in an indictment that "the business activities of the defendants ... were within the flow of, and substantially affected, interstate trade or commerce" is required to establish Sherman Act jurisdiction.[6] The district court's dismissal of the indictment is AFFIRMED.

---

6. We express no opinion on the level of factual specificity required in an indictment to establish Sherman Act jurisdiction. Instead, we direct the attention of those concerned to *Las Vegas, Chrysler, Fitapelli*, and *Cadillac* for guidance. However, we do note that although often an indictment need do no more than merely track the language

of the statute, *see, e.g., United States v. Scott*, 884 F.2d 1163, 1166 (9th Cir.1989), *cert. denied*, —— U.S. ——, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992); *United States v. Zavala*, 839 F.2d 523, 526 (9th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988), such practice is insufficient to establish Sherman Act jurisdiction.