**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony Seids GAINES, aka Seal A; aka Polo; Yvette Crystal Wade; Antonio Dean Blackstone, aka Seal D, aka Lil Sule, Defendants–Appellants.**

No. 00–50018, 00–50027, 00–50284.

D.C.Nos. CR–99–00257–LGB–1, CR–99–00257–LGB–3, CR–99–00257–LGB–4.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2001.*

Decided April 18, 2001.

* In No. 00–50284 only, the panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before HUG, DUHÉ,** and TALLMAN, Circuit Judges.

### MEMORANDUM ***

Anthony Seids Gaines, Yvette Crystal Wade and Antonio Dean Blackstone appeal their jury trial convictions and sentences for 1) conspiracy to interfere with commerce by robbery, 2) interference with commerce by robbery in violation of 18 U.S.C. § 1951, and 3) use or carrying of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). All three appellants participated in one or more armed robberies of K–Mart stores in Southern

California.[1] Gaines, Wade and Blackstone were sentenced to 990 months, 877 months, and 290 months respectively. On appeal, they raise several evidentiary objections, attack the sufficiency of the evidence supporting their convictions, and Gaines disputes the use of a *Pinkerton* jury instruction and upward adjustments to his sentence. We affirm.

### I. Cross-examination of Government Witnesses

We review a trial court's restriction on cross-examination of witnesses for abuse of discretion. *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir.1999).

Gaines contends that the district court should have allowed him to cross-examine Government witnesses Gilbert, Harris, and Gregge regarding their alleged gang affiliation. Under Federal Rule of Evidence 404(b) evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, and intent. Gaines argues that unrestricted cross-examination of these three witnesses would have revealed that they were motivated to lie about his leadership role in the robberies because he was not a member of their gang and "gang members are known to be fiercely loyal to the gang."

While "[t]he Supreme Court placed its imprimatur on the use of gang affiliation evidence to establish bias," the Court also noted that district courts have broad discretion in deciding whether or not to admit evidence of gang membership. *United States v. Takahashi*, 205 F.3d 1161, 1165 (9th Cir.2000), citing *United States v. Abel*, 469 U.S. 45, 49, 105 S.Ct. 465, 83 L.Ed.2d

---

** Honorable John M. Duhé, Jr., Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. Gaines and Wade were convicted in five K–Mart store robberies, Blackstone in one.

450 (1984). Gang affiliation evidence may be admitted if it has probative value. *United States v. Hankey,* 203 F.3d 1160, 1171–72 (9th Cir.2000).

The district court allowed evidence that the witnesses knew each other, lived in the same neighborhood, or had attended the same schools. The only affiliation evidence the district court did not admit involved gang membership. This ruling allowed the jury to evaluate the motives of the witnesses without being poisoned by highly prejudicial testimony regarding alleged gang involvement. The district court was well within its discretion.

The district court's ruling is also supported by 1) evidence that Gilbert and Gregge knew or were friends with Gaines, 2) evidence that Gaines's brother belonged to the same gang as the witnesses, 3) the absence of any evidence that the witnesses were testifying according to gang affiliation, and 4) the fact that the jury heard substantial impeachment evidence regarding Gregge's and Harris's prior criminal histories.

■ Gaines argues also that the district court unduly restricted his cross-examination of Armstrong. Gaines sought to show that Armstrong had stolen $10,000 from Gaines' co-defendant Patrick, and that Patrick had threatened to kill her or have his associates kill her. Because Armstrong testified that Patrick knew Gaines, Gaines asserts that Armstrong was motivated to lie so that Gaines would be incarcerated and would not be able to hurt her on behalf of Patrick. The district court sustained the Government's objection based on relevance. Gaines' reasoning is tenuous at best and this evidentiary ruling is affirmed as discretionary.

■ Wade argues that the district court violated her Sixth Amendment right to confrontation by limiting her cross-examination of Gregge, a key Government witness. "The right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying." *United States v. Payne,* 944 F.2d 1458, 1469 (9th Cir.1991) (citations omitted). Gregge accused Wade of participating in the March 12, 1998, robbery. When Wade produced an alibi (her teacher took attendance that day) the Government successfully moved to strike all references to the March 12, 1998, robbery as an uncharged overt act in the indictment and to exclude evidence pertaining to that crime. Wade maintains that if the jury had heard that Gregge falsely accused her of the March 12, 1998, robbery then they might have discounted his testimony about her involvement in the other robberies.

Wade admits that the jury heard testimony demonstrating Gregge's propensity to commit crimes, his willingness to lie, his desire to reduce a potential life sentence, and his expectation that he would receive some benefit from testifying against her.

■ We review de novo whether a limitation on cross-examination is so severe as to constitute a violation of the Confrontation Clause. *United States v. James,* 139 F.3d 709, 713 (9th Cir.1998). We consider first whether the excluded evidence is relevant, and second whether other legitimate interests outweigh a party's interest in presenting the evidence. *Id.* Third, we will find that a restriction on cross-examination violates the Confrontation Clause *only* if it denies the jury "sufficient information to appraise the biases and motivations of the witness." *United States v. Jenkins,* 884 F.2d 433, 436 (9th Cir.1989) (citations omitted).

■ Wade agrees that the jury heard plenty of other evidence impeaching Gregge's credibility. There is no reason to

believe that without knowledge of Gregge's false accusation the jury could not evaluate his testimony. We find that the restriction on cross-examination regarding Gregge's false accusation did not violate the Confrontation Clause.

■ Moreover, the district court did not abuse its discretion in restricting Gregge's testimony. Under Federal Rule of Evidence 403 a district court may restrict cross-examination without violating the Confrontation Clause if the questioning will elicit information that is prejudicial, irrelevant, cumulative, collateral, or will tend to confuse the jury. *See United States v. Amlani*, 111 F.3d 705, 716 (9th Cir.1997) (affirming limitation on testimony where it would confuse jurors with minimally relevant collateral issues); *United States v. Wills*, 88 F.3d 704, 714 (9th Cir.1996) (affirming prohibition on questions which might prejudice jury).

At the point in which Wade sought to cross-examine Gregge, the district court had already granted the Government's motion to strike the March 12, 1998, robbery as an overt act in the indictment. This robbery was no longer a part of the indictment and can be considered a collateral issue of marginal relevance. Wade has not appealed the district court's decision to grant the Government's motion to strike.

The district court's ruling is not an abuse of discretion because the testimony sought by Wade was cumulative and potentially confusing for the jury. The record is replete with testimony concerning Gregge's prior criminal activity, his lack of honesty, his drug use, and his faulty memory. The March 12, 1998, robbery was not separately charged in this case and a discussion of the details of a sixth robbery could have confused the jury.

■ Even if there was a Confrontation Clause violation, a harmless error analysis applies. *James*, 139 F.3d at 713–14. Gregge's testimony was corroborated by three other witnesses. Any error was harmless and Wade's conviction is affirmed.

## II. The *Pinkerton* Jury Instruction

Gaines argues that the counts in the indictment charging him with violations of 18 U.S.C. § 924(c) were constructively amended by the district court's use of a *Pinkerton* jury instruction on co-conspirator liability. Gaines claims that, although it was assumed that a gun would be used in the robberies, he did not discuss or encourage the use of a firearm and he did not participate in the robberies or provide any guns.[2] Instead of the *Pinkerton* instruction, Gaines requested one on aider and abettor liability.

■ The *Pinkerton* theory of liability holds a defendant liable for the reasonably foreseeable crimes of the defendant's co-conspirators.[3] The Grand Jury Clause of the Fifth Amendment provides that a defendant may only be tried on the grand jury's indictment, which may not be broadened through actual or constructive amendment. Constructive amendment occurs when the evidence at trial supports a crime other than those charged in the indictment. *United States v. Alvarez*, 972 F.2d 1000, 1003 (9th Cir.1992).

■ The legal sufficiency of an indictment is reviewed de novo. *United*

---

**2.** This was disputed by one witness, who testified that Gaines discussed using a gun while in her presence, although Gaines argues that her testimony is incredible for several reasons including the fact that she was in custody at the time.

**3.** *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

*States v. Fleming,* 215 F.3d 930, 935 (9th Cir.2000). An indictment is sufficient if it identifies the elements of the offense charged and sets forth facts necessary to inform the defendant of the crimes charged. *United States v. ORS, Inc.,* 997 F.2d 628, 629 (9th Cir.1993). The Government is not required to include its theory of the case in the indictment. *Id.*

■ Count one of the indictment alleged Gaines's participation in a robbery conspiracy and identifies specific acts of *armed* robbery in furtherance of that conspiracy. Counts three, five, seven, and nine all allege the essential elements of violations of 18 U.S.C. § 924(c). There can be no question that Gaines was on notice that he was charged with a *conspiracy* involving the use of *firearms.* All of the elements necessary for *Pinkerton* liability were included in the indictment. The district court's use of the *Pinkerton* jury instruction is affirmed.[4]

### III. Testimony of Uncharged Robberies

Prior to trial the Government brought a motion in limine regarding evidence of uncharged criminal conduct by Gaines and Government witness Gilbert. The Government chose not to question Gilbert regarding these crimes on direct examination, but was concerned that defense counsel might seek to impeach Gilbert by revealing them through cross examination. This in fact occurred.

At trial, Wade's counsel elicited testimony from Gilbert which described the details of the uncharged robberies and which indicated that Gilbert hoped to receive a more lenient sentence by testifying against Gaines. Gaines did not object. The district court allowed the Government to redirect Gilbert for the limited purpose of dispelling the appearance before the jury that Gilbert had engaged in the uncharged robberies by himself, when in fact Gaines had helped him.

■ The district court did not abuse its discretion in admitting this evidence under Federal Rule of Evidence 404(b). We follow a four-part test in evaluating whether other acts evidence should be admitted: 1) whether the acts prove "a material issue in the case"; 2) whether the acts are "similar to the offense charged"; 3) whether there is sufficient evidence for a jury finding that the defendant committed the other acts; and 4) whether the other acts are not too remote in time. *United States v. Blitz,* 151 F.3d 1002, 1007–08 (9th Cir.1998). We also consider whether the probative value of the acts exceeds the danger of unfair prejudice.[5]

First, the uncharged robberies tended to prove Gaines's knowledge, intent, planning

---

**4.** Gaines relies on the Second Circuit case *United States v. Pedigo,* where the court found that an indictment was impermissibly broadened when a prosecutor obtained a firearm conviction based on a coconspirator's actions. 12 F.3d 618 (7th Cir.1993). *Pedigo* is distinguishable because the indictment there did not specify which firearms were part of the conspiracy count, and the indictment's separate firearm count referred only to the defendant's use of a firearm. The prosecutor argued to the jury that they could convict on uncharged firearms carried by a co-conspirator. Here Gaines was on notice that he was charged with an armed robbery conspiracy, and could be liable for his co-conspirators'

use of firearms in furtherance of the conspiracy.

**5.** Alternatively, the district court was within its discretion by admitting this evidence on the grounds that it was "inextricably intertwined" with the charged conspiracy. *See United States v. Williams,* 989 F.2d 1061, 1070 (9th Cir.1993) (holding that other acts evidence should not be evaluated under a 404(b) analysis when the uncharged conduct was part of a single criminal episode and the defendant was not indicted for all criminal acts).

and preparation for the charged offenses. Second, the uncharged robberies were similar to the crimes charged in the indictment. Third, Gilbert's testimony that he and Gaines committed the uncharged robberies together was sufficient for the jury to draw a conclusion regarding Gaines's participation in the uncharged conduct. Fourth, the uncharged robberies occurred during the same time as the charged conspiracy and were not remote in time. The district court's decision to admit this evidence, after co-defense counsel opened the door, meets all four parts of the test and was not unduly prejudicial.

## IV. Sufficiency of the Evidence Supporting Gaines's Conviction

Gaines contends that the evidence presented at trial was insufficient to support his conviction because there was no evidence suggesting that it was foreseeable that a gun would be used in the robberies. A conviction is supported by sufficient evidence if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir.2000). Gaines's conviction is amply supported by the evidence.

The essential elements of a violation of 18 U.S.C. § 924(c) include proof that the defendant used or carried a firearm during and in relation to a crime of violence. A violation of 18 U.S.C. § 1951 is a "crime of violence" under § 924(c). Under *Pinkerton v. United States*, a co-conspirator is vicariously liable for reasonably foreseeable crimes committed by his co-conspirators in furtherance of the conspiracy. 328 U.S. at 647–48.

In part, the evidence includes the following: 1) the K–Mart stores that were robbed were engaged in interstate commerce; 2) testimony that Gaines met with his co-conspirators before each robbery to plan the robbery; 3) testimony that Gaines recruited several of his co-conspirators including getaway drivers and K–Mart employees; 4) testimony that after each robbery Gaines met with his co-conspirators to divide the proceeds; and 5) testimony that guns were used in each robbery. This evidence was ample to support his conviction.

## V. The District Court's Response to the Jury Note

We review a district court's response to a note from the jury for abuse of discretion and will not reverse unless the trial court committed a clear error in judgment. *United States v. Romero–Avila*, 210 F.3d 1017, 1024 (9th Cir.2000).

During deliberations, the jury asked the district court why Jury Instruction 23 indicated that three elements were required to establish a conspiracy, but listed only two elements. The jury had discovered a typographical error. The conspiracy at issue in this case, arising under 18 U.S.C. § 1951, requires only two elements which were correctly set out in the instruction. All parties agreed with the district court's response, which was to inform the jury that the "three" in Instruction 23 should have been a "two."

Instruction 24 correctly listed three elements which must be proven in order to find that a defendant agreed to participate in a conspiracy. In their note, the jury also asked whether the third element missing from Instruction 23 was contained in Instruction 24. Gaines wanted the district court to inform the jury that Instruction 24 did not paraphrase Instruction 23. Instead, the district court told the jury that the two instructions each stand alone.

Although the district court did not instruct the jury as Gaines requested, the court's response did *not* encourage the jury to assume that the two instructions paraphrased one another as Gaines now claims. On the contrary, the district court's response correctly answered the jury's question about whether there was an element missing in Instruction 24. The district court is affirmed.

## VI. The Upward Adjustments to Gaines's Sentence

We review the district court's findings supporting upward adjustments under U.S.S.G. § 3B1.1(a) and U.S.S.G. § 2B3.1(b)(2)(C) for clear error. *United States v. Lopez–Sandoval*, 146 F.3d 712, 716 (9th Cir.1998); *United States v. Garcia*, 909 F.2d 1346, 1349 (9th Cir.1990).

■ U.S.S.G. § 3B1.1(a) allows the district court to impose a four-level upward adjustment where the defendant organized or led a criminal activity comprising five or more participants. This adjustment is appropriate where the defendant exercised some control over others involved in the offense. *United States v. Narte*, 197 F.3d 959, 965–66 (9th Cir.1999).

■ Gaines argues that he was not an organizer or leader under U.S.S.G. § 3B1.1(a) because his role in planning and organizing was minimal, his share of the money was less or equal to others, the coconspirators he recruited were not integral to the crimes, and he did not exercise meaningful authority. These statements are belied by the evidence.

The testimony of at least four other witnesses identified Gaines as the leader of the robbery crews. Gaines recruited several of his coconspirators, met with the coconspirators prior to each robbery, instructed them on how to carry out the robbery, and then met with them after-

ward to divide the proceeds. The district court did not err in applying the adjustment.

■ Gaines also opposes the five level adjustment he received under U.S.S.G. § 2B3.1(b)(2)(C) on the ground that he never used nor even knew about the use of guns in the robberies. The district court determined that Lezine's and Gregge's possession and brandishing of firearms while they conducted the robberies was reasonably foreseeable to Gaines, who had many meetings with them before and after the robberies, and who had plenty of opportunities to become aware of their methods of operation. The district court did not commit clear error.

## VII. Sufficiency of the Evidence Supporting the Verdict Against Blackstone

■ Blackstone questions the sufficiency of the evidence supporting his conviction. At trial, two of Blackstone's coconspirators, Gregge and Stephens, provided extensive testimony describing Blackstone's participation in the October 11, 1997, K–Mart robbery. In part, this testimony includes: 1) confirmation of Blackstone's presence at the planning meeting which took place prior to the robbery; 2) details of the robbery plan and Blackstone's role, which was to brandish a gun and rob the store; 3) how Blackstone met with the coconspirators the morning of the robbery before going to K–Mart; 4) details of how Blackstone committed the robbery; and 5) how Blackstone fled with the money and later split it among the participants. In light of the evidence, a rational jury could have found beyond a reasonable doubt that Blackstone was guilty.

## VIII. Exclusion of Evidence Regarding Blackstone's Appearance

■ At trial, Blackstone's counsel attempted to ask the officer who investigat-

ed the October 11, 1997, robbery whether K–Mart manager Hoffman ever described the gunman as having a beard during his post-robbery interview with the police. The district court excluded the testimony as hearsay. The Government argues that because Blackstone's counsel failed to articulate on the record the reason why Hoffman's testimony on this subject was not excludable, on appeal we must review this ruling for plain error. *United States v. Campos,* 217 F.3d 707, 712–13 (9th Cir. 2000). Under this standard we will not reverse unless the ruling constitutes plain error affecting the defendant's substantial rights.

It appears that Blackstone objected to the district court's ruling at the time, but did not provide the proper reason for the objection. On appeal, Blackstone now explains that the evidence was necessary to establish Hoffman's state of mind or as a prior consistent statement. Neither exception applies in this case.

Blackstone's counsel wanted to show that Hoffman had not been able to identify Blackstone as the gunman when he was interviewed by the investigating officer. Federal Rule of Evidence 803(3) provides that the hearsay rule does not exclude "state of mind, ... plan, motive, design, mental feeling ..." As defined in this rule, however, "state of mind" does not include "a statement of memory or belief to prove the fact remembered or believed." Blackstone sought to show that Hoffman never described the gunman as having a beard. This is a statement of fact, not testimony regarding Hoffman's state of mind, and the district court properly excluded it.

Nor was the excluded testimony admissible as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B).

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

This exclusion applies only if 1) the declarant testifies at trial and is subject to cross-examination, 2) the statement is consistent with the declarant's testimony, and 3) the statement rebuts a charge of recent fabrication or improper motive. Blackstone did not seek this testimony to rehabilitate Hoffman's testimony as no charge of fabrication or improper motive had been made. The district court did not err in excluding this testimony.

The convictions and sentences as to all defendants are AFFIRMED.