UNITED STATES of America,
Plaintiff–Appellee,

v.

Henry NARTE, Defendant–Appellant.

No. 99–30010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1999

Filed Dec. 1, 1999

1. The Honorable Samuel P. King, United States District Judge for the District of Ha- waii, sitting by designation.

Russell M. Aoki, Aoki & Sakamoto, Seattle, Washington, for the defendant-appellant.

Helen J. Brunner, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: REAVLEY,[1] FERGUSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Henry Narte ("Narte") appeals from the sentence imposed on his plea of guilty for violations of the Lacey Act stemming from the illegal harvest, transportation and sale of geoduck clams under 16 U.S.C. §§ 3372(a)(2)(A) (1999), 3373(d)(1)(B) (1999), and 18 U.S.C. § 371 (1999). Narte challenges the district court's enhancement of his sentence for creating a significant risk of infestation or disease under the United States Sentencing Guidelines (the "Guidelines") section 2Q2.1(b)(2), and an additional enhancement for being an organizer or leader of criminal activity under section 3B1.1(a). We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM the sentence imposed by the district court.

# I

## Background

On August 24, 1998, Narte pleaded guilty to a charge of conspiracy to violate the Lacey Act and to a substantive violation of the statute predicated upon his harvest of geoduck clams in violation of Washington law. 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B) (Lacey Act); 18 U.S.C. § 371 (conspiracy). The Lacey Act is a federal wildlife statute, which imposes federal penalties for specific violations of state law, and provides, in pertinent part, that it is unlawful for any person "to import, export, transport, sell, receive, acquire or purchase in interstate

1. The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

or foreign commerce—any fish or wildlife taken, possessed, transported or sold in violation of any law or regulation of any state." 16 U.S.C. § 372(a)(2)(A).

The state laws at issue in this case are Washington's laws for the sanitary control of shellfish, which strictly regulate the harvest of geoduck clams. Specifically, harvesting geoduck clams in Washington requires a valid harvest agreement entered into with the Washington State Department of Natural Resources ("DNR"), as well as a license from the Washington State Department of Fish and Wildlife. Wash. Rev.Code Ann. § 79.96.080. Harvest is then limited to tracts specifically designated by the DNR, and all geoduck clams sold or offered for sale in Washington must bear shellfish tags to indicate their place of origin. *Id.* at § 69.30.050. Finally, all geoduck clams sold or offered for sale in Washington must be recorded on shellfish receiving tickets and reported to the state. *Id.* at § 69.30.110. The purpose of this regulatory scheme is, in large part, to provide for the sanitary control of shellfish. *Id.* at § 69.30.005.

Although Narte was aware of Washington's requirements for lawfully harvesting and selling geoduck clams, in 1995, with the assistance of several co-conspirators, he began to harvest the clams at various locations in Puget Sound without a valid harvest agreement or license. Presumably to avoid detection, Narte employed a variety of individuals as look-outs on the boat while diving to harvest the clams, and on at least one occasion, harvested from areas that were prohibited because of their proximity to outfalls for sewage treatment plants. After harvesting, the clams were taken to the home of Edward Narte and a variety of other locations in the Puget Sound area for processing prior to sale.[2]

With the assistance of his co-conspirators, Henry Narte sold the geoduck clams to Jong Min Park, the owner and operator of the Ocean Live Seafood Company in Tacoma, Washington. None of the geoduck clams harvested by Narte and his co-conspirators and sold to Park were recorded on shellfish receiving tickets or accompanied by shellfish tags as required. The geoduck clams purchased by Park were sold to a broker and shipped to buyers throughout the United States.

Narte was sentenced for the Lacey Act violations under Guidelines section 2Q2.1. Section 2Q2.1 applies to offenses involving "Specially Protected Fish, Wildlife, and Plants; Smuggling and Otherwise Unlawfully Dealing in Fish, Wildlife and Plants," and expressly applies to the Lacey Act. U.S.S.G. § 2Q2.1. At sentencing, Narte received a two-level enhancement for committing an offense that created a significant risk of infestation or disease, and a four-level enhancement for being an organizer or leader of criminal activity. He was sentenced to 63 months with three years supervised release, ordered to pay a $200 assessment and $200,000 in restitution. On appeal, Narte challenges both enhancements.

## II

### Standard of Review

We review the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Lopez–Sandoval,* 146 F.3d 712, 714 (9th Cir.1998). We review a district court's finding that a defendant was an organizer or leader under Guidelines section 3B1.1(a) for clear error. *United States v. Avila,* 95 F.3d 887, 889 (9th Cir.1996).

---

**2.** Washington law requires that shellfish used for commercial purposes or for sale to humans be processed in establishments certified to meet the requirements of the state board of health. Wash. Rev.Code Ann. § 69.30.060.

Edward Narte's home was not properly certified for this purpose. There is no evidence to suggest that any of the other processing locations were certified.

## III

### Enhancement for Significant Risk of Infestation or Disease

█ Section 2Q2.1 of the Guidelines provides for a two-level enhancement where the base level offense "created a significant risk of infestation or disease transmission potentially harmful to humans, fish, wildlife, or plants." U.S.S.G. § 2Q2.1(b)(2)(B). Narte makes three arguments as to why the district court erred in applying this two-level enhancement. All three arguments fail. First, Narte argues that his violation of the Washington shellfish laws should not, in and of itself, support a finding that he created a significant risk of disease. This argument is unpersuasive because the laws were enacted to make shellfish harvested in Washington as safe as possible. By engaging in conduct prohibited by the laws, Narte created a significant risk of disease.

Narte's first argument presents an issue of law. He asks us to hold that a violation of the sanitary shellfish laws does not automatically, without specific facts, support a finding that he created a significant risk of disease. The Ninth Circuit has not yet interpreted this particular enhancement under the Guidelines. To date, the only published case interpreting the section is the Seventh Circuit's decision in *United States v. Eyoum,* 84 F.3d 1004, 1009 (7th Cir.1996).

The enhancement in *Eyoum* was based on the violation of a federal public health regulation prohibiting the importation of viable turtle eggs and live turtles with a carapace length of less than four inches, which had been proven to be a significant source of Salmonella bacteria. *Id.;* 42 C.F.R. § 71.52. The panel held that the enhancement under section 2Q2.1(b)(2) did not require the Government to establish that the specific animals or wildlife involved were actually diseased or infested, and that the district court was entitled to rely on the public health regulation at issue as an administrative finding that the commercial importation of small turtles creates a significant risk of disease to humans. *Id.* at 1010. We find *Eyoum* persuasive. It is in accord with the text of section 2Q2.1(b)(2) and gives effect to the purpose of the enhancement. We therefore adopt this interpretation as the law of this circuit and hold that by violating Washington's sanitary shellfish laws, Narte, by definition, created a significant risk of infestation or disease.

Narte argues that the reasoning of *Eyoum* is inapplicable because it was based upon a health regulation that prohibited the importation of a whole category of animal, whereas the Washington shellfish laws, in contrast, merely require certain rules to be followed for the lawful harvest of clams. This distinction is not enough to take Narte out from under the reasoning of *Eyoum,* and the argument is logically flawed.

The holding in *Eyoum* was not based on the federal regulation's complete prohibition of turtles. Rather, the court found that the *very existence* of the rule represented an administrative finding that the importation of small turtles creates a significant risk of disease. The Washington shellfish laws provide the same type of finding. The "Purpose" section of the Sanitary Control of Shellfish chapter expressly provides that:

> [p]rotection of the public health requires assurances that commercial shellfish are harvested only from approved growing areas, and that processing of shellfish is conducted in a safe and sanitary manner.

Wash. Rev.Code Ann. § 69.30.005. Narte is correct that importing a small turtle in violation of the health regulation at issue in *Eyoum* is likely to create a *more* significant risk of infestation or disease given the administrative finding that the entire category of turtle is to be summarily rejected. It does not follow, however, that a violation of the less stringent Washington shellfish laws would not create a significant risk of infestation or disease.

Under an *Eyoum* type analysis, the Guidelines section 2Q2.1(b)(2) enhancement clearly applies to Narte for his violation of the Washington shellfish laws. Since 1925, the National Shellfish Sanitation Program has regulated the harvest and handling of shellfish to ensure that shellfish sold in the United States are safe for human consumption. *See* Food and Drug Admin., U.S. Dep't of Health and Human Servs., *National Shellfish Sanitation Program Manual of Operations,* Part 1 (1993 Revision). This program requires states in which shellfish are harvested to adopt laws and regulations consistent with the program. *Id.* In order to deal with the dangers associated with shellfish and comply with the national program, Washington enacted a regulatory scheme that requires, among other things, that shellfish be harvested in certain areas and under certain conditions. *See* Wash. Rev.Code Ann. § 69.30.050. As in *Eyoum,* the district court here should be entitled to rely on the existence of this regulatory scheme as a finding that shellfish harvested and sold in violation of the laws' specific requirements create a significant risk of disease. Narte pleaded guilty to violating Washington's laws for the sanitary control of shellfish and, thus, the Guideline enhancement was perfectly appropriate. Narte's second argument is that there is insufficient evidence in the record to make a finding that his illegal conduct actually created a significant risk of infestation or disease. This argument is no longer relevant in light of our conclusion that Narte, by definition, created a significant risk of infestation or disease when he violated the Washington sanitary shellfish laws. Nevertheless, we would have no trouble finding specific facts in the record to conclude that Narte's actual conduct created such a risk.

■ At Narte's sentencing, the district court concluded that the enhancement was justified given the purposes for which shellfish are so carefully regulated, the fact that they have been known to cause disease, and because Narte harvested geo- duck clams "not only from places that weren't certified, but from places that were prohibited because of their proximity to outfalls of sewage treatment plants." These specific findings by the district court, coupled with Narte's own admission that the clams were processed in areas not certified by the state board of health, provides sufficient evidence to conclude that Narte created a significant risk of disease transmission potentially harmful to humans.

Narte argues that the evidence is insufficient for this purpose because the Government was unable to prove that any of the clams were actually contaminated and did not produce any facts about specific instances of illness caused by clams harvested by Narte and his coconspirators. This argument is not in accord with the language of the enhancement. The enhancement is applied for creating a significant *risk* of harm, not *actual* harm. If we agree with Narte and interpret the enhancement as requiring evidence of actual harm, we allow him to benefit from his unlawful conduct. Narte made it impossible to know whether he caused any actual harm by failing to properly tag and track the illegally harvested clams. He cannot now use his illegal conduct to defeat the two-level enhancement. The uncontested facts contained in the record easily support a finding that Narte created a significant risk of infestation or disease during the time in which he illegally harvested geo- duck clams in various areas of Puget Sound. Accordingly, the sentence enhancement was justified on this ground as well.

■ Finally, Narte's third argument is that the district court engaged in impermissible double-counting because it used the same conduct for the base offense level as it did to enhance his sentence under section 2Q2.1(b)(2). Narte is correct that the same conduct was used to form the base offense level and the enhancement. His argument fails, however, because such

"double-counting" is permissible under the Guidelines.

■ The Guidelines seek to punish a defendant for "'all harm that resulted from the acts and omissions' for which he is responsible." *United States v. Reese*, 2 F.3d 870, 894–95 (9th Cir.1993) (quoting U.S.S.G. § 1B1.3(a)(3)). Double-counting is therefore permissible when it is "necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." *Id.* at 895. In other words, if a certain characteristic of an offense was not accounted for in computing the base offense level, "double-counting" is not only permissible, but necessary. This principle was very clearly explained in *United States v. Reese:*

> [T]he use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double-counting only where, absent such conduct, it is impossible to come within that guideline. If, on the other hand, it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base level offense will not necessarily have been set to capture the full extent of the wrongfulness of the behavior.

*Id.*

Under *Reese*, the district court correctly enhanced Narte's sentence by two-levels for creating a significant risk of infestation or disease. The district court sentenced Narte under Guidelines section 2Q2.1, which is a general sentencing provision for offenses involving the environment, and specifically, those related to conservation and wildlife. Section 2Q2.1 has a base offense level of six. Because it applies to several different types of environmental offenses, it is possible to violate section 2Q2.1 without a finding of significant risk of infestation or disease. Therefore, "the guideline's base level offense will not nec-

essarily have been set to capture the full extent of the wrongfulness of the behavior." *Id.*

In other words, when the Sentencing Commission decided upon a level of six for offenses involving conservation and wildlife, it did not account for conduct that created a significant risk of infestation or disease. Had it done so, it would very likely have chosen a level higher than six to account for the additional harm. Thus, it is permissible under the law, and entirely appropriate, to use Narte's conduct twice to apply the enhancement and arrive at the final offense level which best captures the wrongfulness of his acts.

Narte fails on all three arguments. The district court correctly decided to enhance Narte's sentence by two-levels for creating a significant risk of infestation or disease based upon Narte's violation of the Washington shellfish laws alone or on the specific facts of his case.

## IV

### Role Enhancement

■ Narte argues that the district court erred in applying a four-level enhancement for leadership role under Guidelines section 3B1.1(a), because he never negotiated the price of the clams and was not involved in the marketing ·or distribution of the shellfish. This argument is unpersuasive because Narte exercised control over those involved in the initial harvest and sale of the clams.

■ Guidelines section 3B1.1(a) provides that a district court may increase a defendant's offense level by four levels if the defendant was an "organizer or leader of criminal activity that involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(a). The Government must show by a preponderance of the evidence that the defendant merits an aggravating role adjustment. *See Avila*, 95 F.3d at 889.

To impose an aggravating role adjustment, the district court must determine that " 'the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime.' " *Id.* (quoting *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir.1994)). In determining whether a defendant controlled or organized others, the district court should consider the following factors: "(1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others." *Lopez–Sandoval*, 146 F.3d at 717 (quoting U.S.S.G. § 3B1.1, comment n. 4).

The criminal activity in Narte's case clearly involved more than five participants and was "otherwise extensive" within the meaning of the enhancement. There are also facts to indicate that Narte exerted some control over the enterprise. For example, it is undisputed that Narte recruited several men as divers, employed a variety of individuals as "look outs" on the boat while diving to harvest geoduck clams, sought the assistance of Thomas King to find buyers for the clams for a 10% commission, and was the person to receive payment for the clams directly from the purchaser, Jong Min Park. While the evidence may not be overwhelming, there are sufficient facts in the record illustrating Narte's control to support the district court's finding.

Narte argues that he did not exert control over the criminal activity because he did not set the price for the clams or decide the manner, method, or dates of shipment. This argument is without merit. Although Narte may not have been involved in controlling the marketing and distribution of the clams *after* they were transferred to Park, there is sufficient evidence to support the district court's finding that he had control over participants involved in the initial harvest and sale. In deciding to enhance Narte's sentence, the district court was aware that Narte was not involved in pricing or marketing, and specifically noted that Narte "didn't have the sophistication to do the business end of it. But [he] managed to keep the thing going and have business contacts, either through Mr. King or others."

Based upon these facts and those in the remainder of the record, the district court correctly concluded that Narte was the key organizer and "the person who was consistently in this from beginning to end ... [T]he mainstay of the organization." Accordingly, we affirm the four-level enhancement for leadership role under Guidelines section 3B1.1.

## V

## Conclusion

For the foregoing reasons, the district court's enhancements of Narte's sentence under the Guidelines for creating a significant risk of infestation or disease and for playing a leadership role in the offense are **AFFIRMED.**