**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER E. SWAN,

Defendant - Appellant.

No. 03-5199

(N.D. Oklahoma)

(D.C. No. 03-CR-72-H)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Judge, **ANDERSON** and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Christopher E. Swan pled guilty to one count of violating the Lacey Act, 16 U.S.C. § 3372(a)(2)(A), and aiding and abetting, in violation of 18 U.S.C. § 2(a).

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

He appeals the two-point upward departure he received at sentencing pursuant to United States Sentencing Commission, Guidelines Manual ("USSG"), §2Q2.1(b)(2)(B) (Nov. 2001) for creating "a significant risk of infestation or disease transmission potentially harmful to humans" in connection with his receipt of paddlefish roe from other individuals. We affirm.

## BACKGROUND

Swan made arrangements with Jim Wever for Wever to obtain paddlefish roe[1] in Oklahoma and deliver it to Swan in Arkansas, for a price of $25 per pound. Swan admitted that, at the time he made these arrangements with Weaver, he knew it was illegal under Oklahoma law to take paddlefish roe out of Oklahoma, and he further admitted that he planned to sell the roe to various buyers outside of Arkansas.

Following an extensive investigation, Wever was found guilty of poaching paddlefish roe, in violation of Okla. Stat. tit. 29, § 6-303.1, which prohibits the possession of more than fifty pounds of unprocessed paddlefish eggs or five pounds of processed eggs, as well as the transportation of paddlefish eggs,

---

[1]Paddlefish (Polyodon Spathula) is a species of fish which inhabits lakes, rivers and streams in the Northern District of Oklahoma and surrounding areas. Paddlefish eggs are processed and sold as caviar. While it is considered an endangered species in certain states, the paddlefish population is apparently making a recovery in Oklahoma.

processed or unprocessed, outside the state. Swan was subsequently indicted for violating, and aiding and abetting Wever in violating the Lacey Act, which makes it illegal "to import, export, transport, sell, receive, acquire, or purchase in interstate . . . commerce [] any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C. § 3372(a)(2)(A). Swan pled guilty.

The probation office recommended in Swan's presentence report that he receive a two-point upward departure under USSG §2Q2.1(b)(2)(B) because Swan's offense "created a significant risk of infestation or disease transmission potentially harmful to humans." Swan objected, arguing that he was "properly licensed" and was following applicable regulations when he processed the paddlefish eggs. R. Vol. 2, tab 1.

At sentencing, the government presented testimony from Christopher J. Hurst, a United States Food and Drug Administration investigator, that paddlefish roe is an item subject to United States Food and Drug Administration regulations concerning Hazard Analysis Critical Control Point ("HACCP") plans. [2] He further

_____

[2]21 C.F.R. § 123.6 provides in pertinent part:

(a) *Hazard analysis*. Every processor shall conduct, or have conducted for it, a hazard analysis to determine whether there are food safety hazards that are reasonably likely to occur for each kind of fish and fishery product processed by that processor and to

(continued...)

testified that Wever and his wife, Swan's source for paddlefish roe, were considered processors of paddlefish roe, and as such would also be subject to HACCP regulations and required to have an HACCP plan. Hurst then testified that the Wevers' failure to have an HACCP plan in effect for their processing of roe rendered the roe adulterated under the Food and Drug Administration Act, 21 U.S.C. § 342(a)(4). See 21 C.F.R. § 123.6(g). [3] Hurst also testified about the types of health hazards posed by improperly processed paddlefish roe, including contamination by botulinum brucella and listeria monocytogenes.

A second witness, Thomas McKay, also testified at Swan's sentencing proceeding. McKay was an employee of the United States Fish and Wildlife Service in Edmond, Oklahoma, with responsibility for the northern district of Oklahoma. He testified that he was the supervising agent in the case against the Wevers and was familiar with their case. McKay testified that he considered the Wevers' roe processing methods "unsanitary," that "they had no refrigeration

[2](...continued)
identify the preventive measures that the processor can apply to control those hazards. . . .

(b) *The HACCP plan.* Every processor shall have and implement a written HACCP plan whenever a hazard analysis reveals one or more food safety hazards that are reasonably likely to occur . . . .

[3]21 C.F.R. § 123.6(g) states that "[f]ailure of a processor to have and implement a HACCP plan that complies with this section whenever a HACCP plan is necessary . . . shall render the fish or fishery products of that processor adulterated under [21 U.S.C. § 342(a)(4)]."

equipment," and that the Wevers' residence "was pretty dirty." Tr. of Sentencing Hr'g at 29-30, Appellant's App. Vol. 1 at 79-80. It is undisputed that the Wevers did not have an HACCP plan. Swan did, however, have an HACCP plan.

After listening to the above testimony and hearing arguments from counsel for both sides, the district court found "that the United States has adduced evidence establishing by a preponderance of the evidence that in fact such a risk [of infestation or disease] was created under these circumstances, therefore, the request that the offense level be further adjusted downward is denied." Id. at 40. Swan was sentenced to four months' imprisonment, followed by three years of supervised release, and assessed a fine of $10,000.

Swan argues that the district court erroneously imposed the two–point enhancement under USSG §2Q2.1(b)(2)(B) because he should not be held accountable for the Wevers' failure to have an HACCP plan, nor was there any evidence that the roe which he had received or which he planned to obtain from the Wevers was in fact harmful to humans. [4]

---

[4]While the count to which Swan pled guilty involved an attempt by the Wevers to deliver some eighty-five pounds of processed paddlefish eggs and twenty-six pounds of unprocessed eggs to Swan in Arkansas, which delivery was foiled by Oklahoma game wardens acting in conjunction with the Arkansas Game and Fish Department, Swan admitted that he had purchased processed paddlefish eggs from the Wevers on prior occasions. He was not charged with those.

## DISCUSSION

"We review *de novo* legal questions regarding the application of the sentencing guidelines. We review the district court's factual findings for clear error, 'giving due deference to the district court's application of the guidelines to the facts.'" United States v. Martinez, 342 F.3d 1203, 1205 (10th Cir. 2003) (quoting United States v. Brown, 314 F.3d 1216, 1222 (10th Cir.), cert. denied, 537 U.S. 1223 (2003)). Furthermore, "[w]e review for clear error a district court's factual findings in support of a sentence enhancement." Id. at 1208; see 18 U.S.C. § 3742(e).

As the government points out, USSG §1B1.3(a)(1)(B) provides that:

specific offense characteristics . . . shall be determined on the basis of the following:

. . .

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B1.3(a)(1)(B).

-6-

Swan was convicted of violating the Lacey Act and aiding and abetting the Wevers in violating the Lacey Act, which, in turn, required a violation of Oklahoma law. Accordingly, the district court properly considered the Wevers' conduct in processing the roe which they then transported to Swan. Furthermore, the Wevers' roe is considered adulterated under applicable federal regulations and statutes, and, as such, would present a "significant risk of infestation or disease transmission potentially harmful to humans." See United States v. Blue Ribbon Smoked Fish, Inc., 179 F. Supp. 2d 30, 44 (E.D.N.Y. 2001) ("Because the defendants' HACCP plans are inadequate and do not comply with the FDA regulations, the food [defendant] processes pursuant to them is adulterated as a matter of law, as defined by Section 342(a)(4) of the FDCA.").

Swan argues that two other cases affirming a two-level enhancement under §2Q2.1(b)(2) are distinguishable because they both involved a Lacey Act violation where the state law violated was itself clearly designed to protect the public health. See United States v. Narte, 197 F.3d 959, 962 (9th Cir. 1999); United States v. Eyoum, 84 F.3d 1004, 1009 (7th Cir. 1996). Thus, he argues, the violations of state laws designed to protect the public health "in and of themselves were sufficient for purposes of the enhancement." Appellant's Br. at

-7-

9. He argues that, by contrast, the Oklahoma law violated in this case is merely designed to protect paddlefish, not to further any human health safety goal. [5]

Swan misperceives the basis for the district court's enhancement. He was convicted of violating the Lacey Act and aiding and abetting Wever in violating that act. As part of that course of conduct, Swan obtained and agreed to obtain paddlefish roe which was considered adulterated under the Food and Drug Act. We cannot say that the district court erred in concluding that receipt of adulterated roe to be sold to others would pose a significant risk of disease transmission potentially harmful to humans. Furthermore, it is reasonable to read the Oklahoma law violated in this case, Okla. Stat. tit. 29, § 6-303.1, which regulates the possession and transportation of paddlefish eggs, as not exclusively protecting paddlefish and their eggs, but also protecting consumers of those eggs.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[5]Swan concedes that both the Narte and Eyoum courts held that the government need not prove that the particular food product involved was in fact harmful or diseased in order for the enhancement to apply.